## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | NO. CR 06-2603 RB |
| | ) | |
| JOE ANTHONY REZA, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court on Defendant's ("Mr. Reza's") Motion to Suppress Physical Evidence (Doc. 20), filed on February 7, 2007, and Supplement to Motion to Suppress Physical Evidence, (Doc. 23), filed on March 1, 2007. The parties agree that an evidentiary hearing is unnecessary in that the issues may be resolved based on a review of the search warrant affidavit. Having considered the arguments of counsel, documents of record, relevant law, and being otherwise fully informed, I find that the motion should be denied.

I.     **Facts.**

Mr. Reza is charged with felon in possession of firearms and felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1), 18 U.S.C. § 924(a)(2), and 18 U.S.C. § 924(e)(1).[1] The charges are based on evidence seized pursuant to a search warrant issued for 301 Paris, Artesia, New Mexico on May 24, 2006.

The search warrant affidavit provides in pertinent part:

On May 24, 2006 at approximately 06:30 hours, officers from New Mexico Probation and Parole attempted to visit Joe Reza who is currently a client with probation and parole. The residence that Reza gave to probation officers was 700 N.

---

[1] 18 U.S.C. § 924(e)(1) is cited in the caption, but not the body, of the Indictment.

10th apartment E-38. Probation Officer Cubillos attempted [to] contact Reza at that residence and learned from the occupant, Vanessa Armendariz that Reza did not live there.

Officers and agents from the Pecos Valley Drug Task Force then proceeded to another residence known to be frequented by Reza of 301 Paris. This residence is the home of Reza's mother and agents have seen Reza's vehicle there frequently. Officers and agents arrived at 301 Paris and conducted a security sweep of the yard area surrounding the residence.  Agents went to a camp trailer on the south side of the residence and knocked at the door.  A male identified as Jesse Perez answered the door and agents smelled an odor of burning marijuana coming from inside.  Perez was detained and a security sweep of the trailer was conducted to ensure no one else was inside.  While securing the camp trailer, agents saw a rifle inside the trailer.  Perez told agents that there was also marijuana inside the camp trailer.

Agents then knocked at the door of the main residence and saw a subject look outside.  The occupants inside refused to open the door.  A woman named Dora Perez, Reza's mother, arrived and stated to officers and agents that Joe Reza contacted her via telephone from inside the residence telling her those agents were outside.  A short time later, Reza came outside the residence and surrendered to agents.  Officers conducted a security sweep of the residence to ensure there was no one else present.  Two other occupants identified as Angel Saiz and Erica Rocha were found inside.  Rocha identified herself as Reza's girlfriend and said that she has been with Reza for approximately eight months and he has maintained a residence at 301 Paris since she has known him.

Within the past 30 days, agents from the Pecos Valley Drug Task Force have received information from credible and reliable informants of Joe Reza selling both methamphetamine and crack cocaine from inside the residence of 301 Paris.  Information was also received that Reza will trade these drugs for firearms and is also in possession of a semi-automatic handgun.  Within the past 72 hours, agents received information from a confidential informant that Reza is in possession of large quantities of methamphetamine, crack cocaine, and numerous handguns.  During a recent interview with investigators from the Eddy County Sheriff's Department, Pedro Zarazua stated that he has traded several firearms to Reza at this residence.

Officer[s] from New Mexico Probation and Parole verified that Joe Reza was convicted for the felony charge of shooting at or from a motor vehicle in 2001.

Due to the above listed facts this affiant believes that the recovery of items sought in this affidavit will further this investigation, therefore this affiant respectfully requests that this search warrant be granted.

(Gov't. Ex. 1, Attachment C.)

Based on the foregoing affidavit, the search warrant was issued by Eddy County Magistrate

Daniel Reyes, Jr.  The search warrant authorized a search for, inter alia, controlled substances and

firearms.  (Gov't Ex. 1, Attachment B.)  Mr. Reza states that, during the search of 301 Paris, officers seized two pistols that were located in a bedroom closet wall and that no controlled substances or semi-automatic handguns were found at the residence.  (Def. Mot. to Suppress at 3.)  The Government states that officers found five firearms, drug paraphernalia, marijuana, police body armor, assorted ammunition, a scanner, and documents.  (Gov't Resp. at 4.)

Mr. Reza moves to suppress the pistols, arguing that the search warrant was not supported by probable cause and the good faith exception to the exclusionary rule is inapplicable.  Without conceding that the search warrant was inadequate, the Government argues that the good faith exception applies.

**II.     Discussion.**

   **A.     Whether the search warrant was supported by probable cause.**

Consideration of the validity of the warrant is appropriate even though the Government has all but conceded the invalidity of the warrant.  The Tenth Circuit has "recognized that a reviewing court may, in appropriate cases, turn directly to the good-faith issue without first considering the validity of the warrant under the Fourth Amendment."  *United States v. Rowland*, 145 F.3d 1194, 1206 n. 8 (10th Cir.1998) (internal citations and quotations omitted).  However, when there are important Fourth Amendment questions at issue, and resolution of such questions is necessary to guide future action by law enforcement officers and magistrates, it is appropriate to first address the Fourth Amendment issues before turning to the good-faith issue.  *Id.*  Resolution of the Fourth Amendment issue is often necessary, as it is in this case, to determine whether the agents' reliance on the warrant was reasonable for purposes of the good-faith analysis.  *Id.*  Based on these considerations, I find it appropriate to address the validity of the warrant before considering, in the alternative, the good-faith exception.

The Fourth Amendment requires search warrants to be supported by probable cause.  U.S. Const. amend. IV.  Probable cause requires "more than mere suspicion but less evidence than is necessary to convict."  *United States v. Danhauer*, 229 F.3d 1002, 1005 (10th Cir.2000).  In making a probable cause determination, the issuing magistrate must examine the totality of the circumstances set forth in the affidavit, including an informant's veracity and basis of knowledge. *See Illinois v. Gates*, 462 U.S. 213, 238 (1983).  "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place."  *United States v. Nolan*, 199 F.3d 1180, 1181 (10th Cir.1999).  "The magistrate's determination of probable cause is entitled to great deference."  *United States v. Cantu*, 405 F.3d 1173, 1176-77 (10th Cir.2005).

Mr. Reza claims that the warrant was defective because the affidavit contained no independent corroboration and no information as to the reliability of the informants.  The Court shares Mr. Reza's concerns.  Although the informants who gave information about Mr. Reza selling methamphetamine and crack cocaine from 301 Paris within the prior 30 days were described as "credible and reliable," the affidavit contains no facts to support this conclusion.  The use of the passive voice gives no clue as to the source of the information concerning trades of drugs for firearms and possession of a semi-automatic handgun.  The affidavit contains no statements concerning the reliability or credibility of the "confidential informant," who informed agents that Mr. Reza possessed large quantities of methamphetamine, crack cocaine, and numerous handguns within the prior 72 hours.  Although Pedro Zarazua is named, the affidavit includes no information as to his reliability.

The affidavit does not specify the number of unidentified informants, the information

4

provided by each unidentified informant, and the factual bases for the information.  It is unclear whether the information received concerning the trade of drugs for firearms was obtained from Pedro Zarazua, or one or more of the unidentified informants.  The reader is left to wonder what Pedro Zarazua traded for the firearms.

The Tenth Circuit has stated: "[a]n affidavit replete with repetitive and tenuous facts does not provide a magistrate with a sufficient basis for drawing a reasonable inference that a search would uncover evidence of criminal activity."  *Danhauer*, 229 F.3d 1006.  The affidavit in *Danhauer* contained repetitive statements regarding the physical description of the residence and the identity of the occupants, as well as statements about the criminal histories of the occupants.  *Id*. The affidavit did not reveal the informant's basis of knowledge or adequately verify the informant's allegation that the occupants were manufacturing methamphetamine.  *Id*.  The Tenth Circuit found that the affidavit in *Danhauer* was insufficient to establish probable cause.  *Id*.  The affidavit in this case shares many characteristics with the *Danhauer* affidavit.  *Id*.  That said, the information in the affidavit, taken as a whole, supports the magistrate's finding that probable cause existed to issue a search warrant for 301 Paris.

"When there is sufficient independent corroboration of an informant's information, there is no need to establish the veracity of the informant."  *Danhauer*, 229 F.3d at 1006; *see also United States v. Le*, 173 F.3d 1258, 1266 (10th Cir.1999) (concluding that affiant's search of suspect's trash and discovery of used bag with white powder residue confirmed to be methamphetamine helped corroborate information received from confidential sources).  Here, the tips from the "credible and reliable" informants, the "confidential" informant, and Pedro Zarazua were sufficiently corroborated so as to dispense with the need to verify their reliability.  The totality of the circumstances set forth in the affidavit sufficed to establish probable cause to search 301 Paris.

5

Unusually so, this search warrant affidavit was prepared after the officers had actually been on-site and had made independent observations of illegal drug use and firearms on the premises. After agents smelled burning marijuana emanating from the camp trailer, they performed a security sweep and observed a rifle inside.  When agents knocked at the door of the main residence, Mr. Reza and the other occupants initially refused to open the door.  Pedro Zarazua and at least one other informant stated that Mr. Reza possessed firearms.  Consistency between the reports of two independent informants helps to validate both accounts.  *See United States v. Artez*, 389 F.3d 1106, 1114 (10th Cir.2004).  Pedro Zarazua stated that he personally traded several firearms to Reza at 301 Paris.  These factors gave rise to probable cause to believe that Mr. Reza possessed firearms at 301 Paris.

Agents confirmed that Mr. Reza had a prior felony conviction.  A criminal record is not generally germane to the probable cause calculus.  *See United States v. Tuter*, 240 F.3d 1292, 1297 (10th Cir.2001) (fact that defendant had criminal history and his wife illegally possessed firearms a year before was insufficient to corroborate tip that defendant was making pipe bombs in his garage).  However, in this case, the felony conviction, combined with the tips that Mr. Reza possessed firearms and the independent observations of the officers, supported a finding of probable cause that Mr. Reza committed the crime of felon in possession of firearms at 301 Paris.

Magistrate Reyes was permitted to draw reasonable inferences from the information provided in the warrant application, *United States v. Tisdale*, 248 F.3d 964, 971 (10th Cir.2001), and his probable cause determination is entitled to great deference.  *Cantu*, 405 F.3d at 1176-77.  The information in the affidavit was sufficient to support Magistrate Reyes' finding of probable cause.

**B.      Whether the evidence is admissible under the good faith exception.**

In the alternative, even if the warrant were not supported by probable cause, the evidence

would be admissible under the good faith exception to the exclusionary rule.  *See United States v. Leon*, 468 U.S. 897, 919-22 (1984).  Evidence seized under a warrant later found to be invalid may be admissible if the executing officers acted in good faith and with reasonable reliance on the warrant.  *Id.*, 468 U.S. at 913.  The government bears the burden of proving that law enforcement officers' reliance on the search warrant was objectively reasonable.  *Corral-Corral*, 899 F.2d at 932.  However, there is a presumption that when an officer acts upon a search warrant, the officer acts in good faith.  *United States v. Price*, 265 F.3d 1097, 1101 (10th Cir.2001).

In *Leon*, the Supreme Court identified four situations in which the good-faith exception to the warrant requirement is inapplicable: (1) the magistrate or judge, in issuing a warrant, was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) the issuing judge wholly abandoned his judicial role; (3) the affidavit in support of the warrant was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) the warrant was so facially deficient that the executing officer could not reasonably believe it was valid.  *Leon*, 468 U.S. at 922-23; *see also Tisdale*, 248 F.3d at 972 (discussing circumstances in which the good faith exception is inapplicable).  None of these situations are present here.

Mr. Reza relies on the third exception; he claims that the search warrant was so lacking in indicia of probable cause that official belief in the existence of probable cause was unreasonable.  The absence of information does not necessarily preclude an officer from manifesting a reasonable belief that the warrant was properly issued.  *Danhauer*, 229 F.3d at 1007.  The affidavit was not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Leon, 468 U.S. at 923 (internal quotation marks omitted).  The good-faith exception applies because the officers' reliance on the search warrant was objectively reasonable.  Mr. Reza

has not shown reckless disregard for the truth or that the affidavit was insufficient to support a finding of probable cause.  The evidence is admissible under the good faith exception.

**III.    Conclusion.**

The warrant was supported by probable cause.  In the alternative, the good faith exception to the exclusionary rule applies.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**